UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS CATINELLA and CAREN CATINELLA,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NATIONAL FLOOD INSURANCE PROGRAM, W. CRAIG FUGATE in His Official Capacity as Administrator of the Federal Emergency Management Agency, JANET NAPOLITANO in Her Official Capacity as Secretary of the United States Department of Homeland Security; and NEW YORK PROPERTY INSURANCE UNDERWRITING ASSOCIATION,<br><br>*Defendants*. | Index No.<br><br>**COMPLAINT** |

Plaintiffs Thomas Catinella and Caren Catinella, by and through their undersigned counsel, Kublanovsky Law, LLC, hereby state and allege as follows:

**NATURE OF ACTION**

1. Plaintiffs Thomas Catinella and Caren Catinella ("The Catinellas" or "Plaintiffs") are residents of Massapequa, New York. The Catinellas' home was substantially damaged by Hurricane Sandy on or about October 29, 2012.

2. Defendant Federal Emergency Management Agency ("FEMA") is a federal agency under the United States Department of Homeland Security that administers and issues flood insurance policies pursuant to the National Flood Insurance Program and the National Flood Insurance Act of 1968, as amended, 42 U.S.C. § 4001, *et seq*.

3. The Catinellas purchased a National Flood Insurance Policy from Defendant FEMA that provided coverage for the damage they sustained. The Catinellas purchased flood insurance with a limit of liability of $250,000 for their building.

4. Defendant New York Property Insurance Underwriting Association ("NYPIUA") issues homeowner's property insurance policies.

5. The Catinellas purchased homeowner's insurance from Defendant NYPIUA with a limit of liability of $213,500 for the dwelling and $31,200 for rental value.

6. The Flood Policy indicated that FEMA guaranteed "coverage for direct physical loss by or from flood," and the Homeowner's Policy indicated that NYPIUA guaranteed coverage for other perils.

7. The Catinellas suffered substantial damages to their home and its contents due to Hurricane Sandy.

8. Despite clear language obligating it to pay up to $244,700 to Plaintiffs, NYPIUA has unreasonably denied coverage and underpaid for the damage to the Catinellas' home and contents.

9. Despite clear language obligating it to pay up to $250,000, FEMA has unreasonably denied coverage and underpaid for the damage to the Catinellas' home and contents.

10. The devastation caused to the Catinellas' home and contents by Hurricane Sandy was severe enough. Defendants' refusal to honor its insurance obligations is only compounding that damage.

**PARTIES**

11. Plaintiffs Thomas and Caren Catinella are individuals and residents of Massapequa, New York. Their home at 150 Alhambra Road, Massapequa, New York, 11758-6608 was damaged by Hurricane Sandy.

12. Defendant W. Craig Fugate is a proper party to this action pursuant to 42 U.S.C. § 4072, which authorizes suit against the administrator of FEMA in his official capacity to assert claims

related to the disallowance or partial disallowance of a flood insurance claim.  See also 44 C.F.R. §§ 61, App. A(1), Section VII(R) and 62.22.

13. Defendant Janet Napolitano is also a proper party pursuant to section 503 of the Homeland Security Act of 2002, Pub. Law 107 296, 5 U.S.C. §§ 301 et seq., which transferred all functions, personnel, and liabilities of FEMA to the Secretary of the Department of Homeland Security.

14. Defendant FEMA is a federal agency and a component of the U.S. Department of Homeland Security, found at 500 C Street SW, Washington, D.C. 20472.  The National Flood Insurance Program is administered by FEMA.

15. Upon information and belief, Defendant NYPIUA is a corporation domiciled in the State of New York, with its principal place of business at 100 William Street, New York, New York, 10038.

## JURISDICTION AND VENUE

16. This action arises under the NFIA, federal regulations and common law, and the flood insurance Policy that Defendant FEMA procured for and issued to Plaintiffs.  The Policy covered the losses to Plaintiffs' property, which is located in this judicial district.

17. Federal Courts have exclusive jurisdiction pursuant to 42 U.S.C. § 4072 over all disputed claims under NFIA Policies, without regard to the amount in controversy, when brought against the government.

18. This Court has original exclusive jurisdiction to hear this action pursuant to 42 U.S.C. § 4072 because the insured property is located in this judicial district.

19. This Court has jurisdiction of the within state law defendants and claims by virtue of the supplemental jurisdiction provision contained within 28 U.S.C.A. 1367(a) in that the state law Defendant and claims are so related to the claims where this Court has original jurisdiction,

namely, the flood claims, that they form part of the same case or controversy under Article III of the United States Constitution.

20. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 4072 because the Plaintiffs' claims arise in the Eastern District of New York, the insured property is located in the Eastern District of New York, and Defendants are subject to personal jurisdiction in the Eastern District of New York.

## FACTS COMMON TO ALL CLAIMS

21. FEMA sold and issued National Flood Insurance Policy Number SF00286864 (the "Flood Policy") to the Catinellas to cover losses to their dwelling and personal property caused by flood damage to their home at 150 Alhambra Road, Massapequa, New York, 11758-6608 (the "Property").

22. NYPIUA also sold and issued Homeowner Policy Number 0030586707-00 (the "Homeowner's Policy") to the Catinellas to cover losses to their dwelling and personal property caused by perils other than flood to the structures and contents at their Property. (Collectively, the Flood Policy and the Homeowner's Policy are referred to as "the Policies".)

23. The Catinellas paid all premiums when due on the Policies.

24. The Policies were in full force and effect when Hurricane Sandy hit on October 29, 2012 and in its immediate aftermath.

25. On or about October 29, 2012, Hurricane Sandy made landfall in New York, causing widespread devastation to property.

26. As a result of Hurricane Sandy, the Catinellas sustained substantial losses and damage to their property and contents therein, which was covered by the Policies issued to them.

27. The Catinellas reported the damage and properly submitted their Proof of Loss and claim for damages. Plaintiffs duly performed all of the conditions of the Policies and fully complied with all provisions and investigations of their claims.

28. The damage to the Property, which was fully covered by the Policies, made the Catinellas' home unlivable and unsafe.

29. The damage to the Property included flood, wind, sand, and other covered perils caused by Hurricane Sandy.

30. The damage to the Property also included significant amounts of debris, removal of which is also covered under the Policies.

31. Pursuant to a Federal Emergency Management Agency ("FEMA") memorandum dated February 15, 2013, the standard National Flood Insurance Program policies such as the Flood Policy at issue here cover the Catinellas damages.

32. The February 15, 2013 FEMA memorandum states: "**Water, Moisture, Mildew, or Mold Damage** – When this damage occurs in connection with a covered direct physical loss by or from flood, it will be covered unless *there is clear evidence* of the policyholder's failure to inspect and maintain the insured property, where it was feasible to do so." (*Bold in original; emphasis added*.)

33. FEMA has not cited to any "clear evidence of the policyholder's failure to inspect and maintain the insured property, where it was feasible to do so."

34. Defendants, their agents, servants and employees improperly adjusted and denied Plaintiffs' claims without an adequate investigation, even though Plaintiffs' losses were covered by the Policies. Defendants' partial payment of the Catinellas' claims did not cover their damages as guaranteed by the Policies.

35. Defendants failed to properly investigate the damage and assess the debris for removal, as Defendants guaranteed they would do pursuant to the Policies.

36. Defendants, their agents, servants and employees unjustifiably refused to perform its obligations under the Policies and wrongfully denied payment in the full amount of Plaintiffs' claims.

37. Despite their contractual duty under the Policies to fairly and properly adjust these claims, Defendants failed and refused to sufficiently compensate Plaintiffs for their covered losses.

38. Because Defendants and their agents failed to pay Plaintiffs on their claims, Plaintiffs have incurred significant out of pocket costs to properly repair the damages to their Property and retain attorneys. This has caused additional damages to Plaintiffs that were within the contemplation of the parties as a foreseeable consequence of Defendants' failure to perform their obligations under the Policies.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Flood Policy)

39. Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

40. The Flood Policy, at all times relevant and material to the case, constituted a contract between Plaintiff and FEMA.

41. Plaintiffs fully performed under the contract by paying all premiums when due and by cooperating with FEMA regarding the claims. Plaintiffs timely complied with all conditions precedent to their recovery herein, including making an appropriate and adequate demand and submitting a sworn Statement in Proof of Loss.

42. FEMA failed to perform and materially breached the insurance contract when it wrongfully failed to pay and refused to reimburse Plaintiffs what they are owed for damages caused by Hurricane Sandy to the Property covered under the Flood Policy. FEMA also breached the contract by failing to perform other obligations it owed Plaintiffs under the Flood Policy.

43. By reason of FEMA's breach, including its failure to reimburse Plaintiffs for the covered losses, FEMA is liable to and owes Plaintiffs for the actual damages they suffered as a result of FEMA's breach, all costs associated with recovering, repairing and/or replacing the covered property, including compensatory damages, in an amount to be established at trial but no less than the combined Flood Policy limits, together with interest and all other damages that Plaintiffs may prove as allowed by law.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Homeowner's Policy)

44. Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

45. The Homeowner's Policy, at all times relevant and material to the case, constituted a contract between Plaintiffs and NYPIUA.

46. Plaintiffs fully performed under the contract by paying all premiums when due and by cooperating with NYPIUA regarding the claims. Plaintiffs timely complied with all conditions precedent to their recovery herein, including making an appropriate and adequate demand.

47. NYPIUA failed to perform and materially breached the insurance contract when it wrongfully failed to pay and refused to reimburse Plaintiffs what they are owed for damages caused by Hurricane Sandy to the Property covered under the Homeowner's Policy. NYPIUA

7

also breached the contract by failing to perform other obligations it owed Plaintiffs under the Homeowner's Policy.

48. By reason of NYPIUA's breach, including its failure to reimburse Plaintiffs for the covered losses, NYPIUA is liable to and owes Plaintiffs for the actual damages they suffered as a result of NYPIUA's breach, all costs associated with recovering, repairing and/or replacing the covered property, including compensatory damages, in an amount to be established at trial but no less than the combined Homeowner's Policy limits, together with attorneys' fees, interest and all other damages that Plaintiffs may prove as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. On Plaintiffs' First Cause of Action for Breach of Contract as against Defendant FEMA, in an amount to be determined at trial, but in no event less than $150,000; and

B. On Plaintiffs' Second Cause of Action for Breach of Contract as against Defendant NYPIUA, in an amount to be determined at trial, but in no event less than $150,000; and

C. Attorneys' fees for breach of the Homeowner's Policy;

D. Attorneys' fees, pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, because as an issuer of Standard Flood Insurance Policies, Defendant FEMA is a federal agency under the meaning of the EAJA and 42 U.S.C. § 4003;

E. For a jury trial on the Homeowner's Policy claims, pursuant to F.R.C.P. 38; and

    F.      For such other and further relief that the Court deems just and proper.

Dated: December 1, 2014
       New York, New York

                            KUBLANOVSKY LAW LLC

                By:     /s/ Eugene D. Kublanovsky
                      Eugene D. Kublanovsky (EK 0605)

                      817 Broadway
                      5th Floor
                      New York, NY 10003
                      Tel: (212) 729-4707
                      Fax: (973) 762-4032
                      Email: eugene@edklaw.com

                      *Counsel for Plaintiffs Thomas Catinella and Caren Catinella*